**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| STATE OF CALIFORNIA, et al., | ) |
| *Plaintiffs*, | ) |
| and | ) Case No. 1:19-cv-2826-KBJ |
| NATIONAL COALITION FOR ADVANCED TRANSPORTATION, | ) |
| *Proposed Intervenor-Plaintiff*, | ) |
| v. | ) |
| ELAINE L. CHAO, et al., | ) |
| *Defendants*. | ) |
| | |
| ENVIRONMENTAL DEFENSE FUND, et al., | ) |
| *Plaintiffs*, | ) |
| and | ) Case No. 1:19-cv-2907-KBJ |
| NATIONAL COALITION FOR ADVANCED TRANSPORTATION, | ) |
| *Proposed Intervenor-Plaintiff*, | ) |
| v. | ) |
| ELAINE L. CHAO, et al., | ) |
| *Defendants*. | ) |

**MOTION OF NATIONAL COALITION FOR ADVANCED TRANSPORTATION TO INTERVENE AS A PLAINTIFF**

The National Coalition for Advanced Transportation ("NCAT") respectfully submits this motion to intervene as a plaintiff in the above-captioned cases pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B) and Local Rule 7(j).  The points and authorities supporting this motion are set forth in NCAT's attached memorandum of law.

Pursuant to Local Rule 7(m), counsel for NCAT has conferred with counsel for Plaintiffs and Defendants in the above-captioned cases.  Counsel for Plaintiffs in Case No. 1:19-cv-2826-KBJ take no position on this motion, and counsel for Plaintiffs in Case No. 1:19-cv-2907-KBJ do not oppose this motion.  As of the time of this filing, counsel for Defendants have not provided a response regarding their position on this motion.

Dated:  November 15, 2019

Respectfully submitted,

*/s/ Devin M. O'Connor*
Devin M. O'Connor (D.C. Bar #1015632)
Ethan P. Prall (D.C. Bar #1029341)
(application pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2200
devin.o'connor@lw.com

*Counsel for Proposed Intervenor-Plaintiff*
*National Coalition for Advanced Transportation*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2019, I electronically filed the foregoing Motion of National Coalition for Advanced Transportation to Intervene as a Plaintiff, along with the accompanying proposed order and proposed complaint, with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.

The participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ Devin M. O'Connor*
Devin M. O'Connor

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF CALIFORNIA, et al., | ) |
| *Plaintiffs*, | ) |
| and | ) Case No. 1:19-cv-2826-KBJ |
| NATIONAL COALITION FOR ADVANCED TRANSPORTATION, | ) |
| *Proposed Intervenor-Plaintiff*, | ) |
| v. | ) |
| ELAINE L. CHAO, et al., | ) |
| *Defendants*. | ) |
| | |
| ENVIRONMENTAL DEFENSE FUND, et al., | ) |
| *Plaintiffs*, | ) |
| and | ) Case No. 1:19-cv-2907-KBJ |
| NATIONAL COALITION FOR ADVANCED TRANSPORTATION, | ) |
| *Proposed Intervenor-Plaintiff*, | ) |
| v. | ) |
| ELAINE L. CHAO, et al., | ) |
| *Defendants*. | ) |

**MEMORANDUM IN SUPPORT OF MOTION OF NATIONAL COALITION FOR ADVANCED TRANSPORTATION TO INTERVENE AS A PLAINTIFF**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

    A.    Statutory and Regulatory Background ..................................................... 2

    B.    The NHTSA Rulemaking and This Litigation ......................................... 4

    C.    NCAT's Interests .................................................................................... 5

ARGUMENT ...................................................................................................... 7

I.     NCAT IS ENTITLED TO INTERVENE AS OF RIGHT ................................... 7

    A.    NCAT Has Standing To Intervene ........................................................ 7

    B.    NCAT's Motion is Timely ..................................................................... 9

    C.    NCAT Claims Legally Protected Interests In These Cases ..................... 11

    D.    These Cases Threaten To Impair NCAT's Interests .............................. 11

    E.    NCAT's Interests Are Not Adequately Represented By The Existing Parties ................................................................................................. 12

II.    ALTERNATIVELY, THIS COURT SHOULD GRANT NCAT PERMISSIVE INTERVENTION .......................................................................................... 13

CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amador County v. United States Department of the Interior*,
772 F.3d 901 (D.C. Cir. 2014) ............................................................................7, 10

*California ex rel. Brown v. EPA*,
No. 18-1114, 2019 WL 5474018 (D.C. Cir. Oct. 25, 2019) ......................................5

*Carpenters Industrial Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017) .....................................................................................8

*Clinton v. City of New York*,
524 U.S. 417 (1998) ..................................................................................................8

*Competitive Enterprise Institute v. NHTSA*,
901 F.2d 107 (D.C. Cir. 1990) ..................................................................................8

*Crossroads Grassroots Policy Strategies v. FEC*,
788 F.3d 312 (D.C. Cir. 2015) .............................................................................7, 12

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) ................................................................................12

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) .................................................................7, 10, 11, 12

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977) ..................................................................................................7

*Jones v. Prince George's County*,
348 F.3d 1014 (D.C. Cir. 2003) ..............................................................................11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...............................................................................................7, 8

*Motor & Equipment Manufacturers Ass'n v. EPA*,
627 F.2d 1095 (D.C. Cir. 1979) ................................................................................2

*Roane v. Leonhart*,
741 F.3d 147 (D.C. Cir. 2014) ................................................................................10

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) ...............................................................................7, 8

\* Authorities chiefly relied upon are marked with an asterisk.

ii

**Page(s)**

## STATUTES AND REGULATIONS

42 U.S.C. § 7507 ..................................................................................................................3

42 U.S.C. § 7543(b) .............................................................................................................2

42 U.S.C. § 7607(b)(1) ........................................................................................................1

49 U.S.C. § 32902(a)-(c) .....................................................................................................3

49 U.S.C. § 32902(f) ...........................................................................................................3

49 U.S.C. § 32919(a) ...........................................................................................................3

Cal. Code Regs. tit. 13, § 1961.2 ........................................................................................4

Cal. Code Regs. tit. 13, § 1961.3 ........................................................................................4

Cal. Code Regs. tit. 13, § 1962.2(a) ....................................................................................4

49 C.F.R. § 531.7 .................................................................................................................5

49 C.F.R. § 533.7 .................................................................................................................5

49 C.F.R. pt. 531, Appendix B ............................................................................................5

49 C.F.R. pt. 533, Appendix B ............................................................................................5

## OTHER AUTHORITIES

73 Fed. Reg. 12,156 (Mar. 6, 2008) ....................................................................................2

74 Fed. Reg. 32,744 (July 8, 2009) .....................................................................................2

78 Fed. Reg. 2112 (Jan. 9, 2013) ........................................................................................4

83 Fed. Reg. 42,986 (proposed Aug. 24, 2018) ..................................................................4

84 Fed. Reg. 51,310 (Sept. 27, 2019) .............................................................................1, 5

California Air Resources Board, *2018 Zero Emission Vehicle Credits*,
    https://ww2.arb.ca.gov/ sites/default/files/2019-
    11/2018%20ZEV%20Credit%20Annual%20Disclosure_103119.pdf (last
    visited Nov. 13, 2019) ..................................................................................................6

California Air Resources Board, *States that have Adopted California's Vehicle
    Standards under Section 177 of the Federal Clean Air Act* (Sept. 27, 2019),
    https://ww2.arb.ca.gov/sites/default/files/2019-10/ca_177_states.pdf ......................6

**Page(s)**

Fed. R. Civ. P. 24(a)(2) ........................................................................................................1

Fed. R. Civ. P. 24(b)(1)(B) ...............................................................................................1, 13

Fed. R. Civ. P. 24(b)(3) ........................................................................................................13

# INTRODUCTION

In September 2019, the U.S. Department of Transportation's National Highway Traffic Safety Administration ("NHTSA") issued a final rule, announcing a new interpretation of its preemption authority relating to vehicle fuel economy standards as part of a rulemaking entitled "The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program." 84 Fed. Reg. 51,310 (Sept. 27, 2019).[1]  In that rulemaking, NHTSA interpreted the Energy Policy and Conservation Act ("EPCA") to preempt all state laws or regulations that regulate carbon dioxide ($CO_2$) emissions from automobile tailpipes.  The plaintiffs in the above-captioned cases challenge that action by NHTSA as arbitrary and capricious, exceeding NHTSA's authority, contravening Congressional intent, and violating the National Environmental Policy Act.  The National Coalition for Advanced Transportation ("NCAT") moves to intervene in support of the plaintiffs in these challenges to NHTSA's action.[2]

NCAT is a coalition of companies and non-profit organizations that supports electric vehicle and other advanced transportation technologies and related infrastructure, including business leaders engaged in energy supply, transmission, and distribution; vehicle and component design and manufacturing; and charging infrastructure production and implementation, among other activities.  NCAT submits this memorandum of points and authorities in support of its motion to intervene as a plaintiff as of right under Federal Rule of Civil Procedure 24(a)(2), or alternatively, permissively under Federal Rule of Civil Procedure 24(b)(1)(B).  NCAT respectfully

---

[1]    In the same Federal Register notice, the U.S. Environmental Protection Agency ("EPA") finalized separate actions under the Clean Air Act ("CAA"), including withdrawal of the waiver that EPA previously granted California under CAA Section 209(b).  84 Fed. Reg. at 51,310.  NCAT does not challenge EPA's separate final actions in this case because the CAA directs that the federal courts of appeals have exclusive jurisdiction over review of such actions. *See* 42 U.S.C. § 7607(b)(1).

[2]    NCAT member Center for Climate and Energy Solutions is not participating in this litigation as this organization does not participate in litigation as a matter of general practice.

requests that this Court grant its motion to intervene as of right because it has constitutional standing to intervene in these cases, its motion is timely, it claims a legally protected interest, the cases threaten to impair that interest, and the interest is not adequately represented by the existing plaintiffs.  Because NCAT has claims that share a common question of law with the plaintiffs' challenges and intervention will not unduly delay or prejudice the adjudication of the original parties' rights in any way, in the alternative, NCAT should be granted permissive intervention.

## BACKGROUND

### A.      Statutory and Regulatory Background

California has regulated motor vehicle air pollutant emissions for well over 50 years in accordance with the Clean Air Act ("CAA"), setting pioneering emissions standards that have driven advances in electric and other advanced vehicle technology.  In recognition of California's history of cutting-edge emissions regulations and the need for such regulations in the state, Congress provided in Section 209(b) of the CAA that EPA must grant a waiver of preemption to California to allow the state to issue its own vehicle emissions regulations, if certain statutory conditions are met.  *See* 42 U.S.C. § 7543(b).  Accordingly, for decades EPA has granted waivers of preemption allowing California to regulate vehicle emissions.[3]  *Cf. Motor & Equip. Mfrs. Ass'n. v. EPA*, 627 F.2d 1095, 1110–11 (D.C. Cir. 1979) ("The history of congressional consideration of the California waiver provision . . . indicates that Congress intended the State to continue and expand its pioneering efforts at adopting and enforcing motor vehicle emission standards different

---

[3]      The sole exception occurred in 2008, when EPA denied a waiver request for California's model year 2009 and later vehicle greenhouse gas emissions regulations.  California State Motor Vehicle Pollution Control Standards; Notice of Decision Denying a Waiver of Clean Air Act Preemption for California's 2009 and Subsequent Model Year Greenhouse Gas Emission Standards for New Motor Vehicles, 73 Fed. Reg. 12,156, 12,156–57 (Mar. 6, 2008).  In July 2009, however, EPA granted California's request for a waiver.  California State Motor Vehicle Pollution Control Standards; Notice of Decision Granting a Waiver of Clean Air Act Preemption for California's 2009 and Subsequent Model Year Greenhouse Gas Emission Standards for New Motor Vehicles, 74 Fed. Reg. 32,744 (July 8, 2009).

from and in large measure more advanced than the corresponding federal program; in short, to act as a kind of laboratory for innovation."). CAA Section 177 provides that other states may adopt California's vehicle emissions standards for which a waiver of preemption has been granted (the "Section 177 States"). 42 U.S.C. § 7507.

In 1975, Congress enacted EPCA in response to a set of petroleum crises that necessitated fuel conservation in the United States. Pursuant to EPCA, NHTSA sets corporate average fuel economy ("CAFE") standards for new motor vehicles based on the "maximum feasible average fuel economy level" for each model year. 49 U.S.C. § 32902(a)-(c). In setting CAFE standards, NHTSA is required to "consider technological feasibility, economic practicability, the effect of other motor vehicle standards of the Government on fuel economy, and the need of the United States to conserve energy." *Id.* § 32902(f). EPCA includes a preemption provision that provides as follows:

> When an average fuel economy standard prescribed under this chapter [49 U.S.C. §§ 32901 *et seq.*] is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter.

*Id.* § 32919(a). EPCA does not delegate any authority to NHTSA to interpret the scope of this provision.

EPA has granted waivers of preemption under CAA Section 209(b) to California for standards that limit greenhouse gas ("GHG") emissions from new vehicles as well as for zero emission vehicle ("ZEV") standards, which require that a certain percentage of new vehicles be ZEVs. Most recently, in January 2013, EPA granted the California Air Resources Board's request for a CAA Section 209(b) waiver to enforce its Advanced Clean Car regulations, which include Low Emission Vehicle III GHG standards and ZEV standards. *See California State Motor Vehicle*

3

Pollution Control Standards; Notice of Decision Granting a Waiver of Clean Air Act Preemption for California's Advanced Clean Car Program and a Within the Scope Confirmation for California's Zero Emission Vehicle Amendments for 2017 and Earlier Model Years, 78 Fed. Reg. 2112 (Jan. 9, 2013). California's Low Emission Vehicle III regulations require that manufacturers reduce criteria pollutants and GHG emissions from light- and medium-duty vehicles. *See* Cal. Code Regs. tit. 13, §§ 1961.2, 1961.3. California's ZEV standards require manufacturers to submit credits reflecting the production and delivery for sale in California of prescribed volumes of ZEVs, as adjusted through certain crediting formulas established by the regulation. Importantly, ZEVs are defined as "vehicles that produce zero exhaust emissions of any criteria pollutant (or precursor pollutant) or greenhouse gas, excluding emissions from air conditioning systems, under any possible operational modes or conditions." *Id.* § 1962.2(a). To date, twelve states have adopted California's GHG standards, and many of those states have adopted California's ZEV standards—in each case pursuant to CAA Section 177.

### B. The NHTSA Rulemaking and This Litigation

In direct contravention of historic practice, NHTSA changed course on August 24, 2018, by issuing a proposed rule that purports to terminate California's historic right under the CAA to regulate vehicle emissions, in part by adopting a novel reinterpretation that EPCA preempted California and the Section 177 States' GHG and ZEV standards. *See* The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule for Model Years 2021–2026 Passenger Cars and Light Trucks, 83 Fed. Reg. 42,986 (proposed Aug. 24, 2018) (the "Proposed Regulation"). NCAT submitted comments on the Proposed Regulation, objecting to NHTSA's proposed interpretation of EPCA, among other items. *See* Comments of the National Coalition for Advanced Transportation on the

Proposed Regulation, Docket Nos. NHTSA-2018-0067, NHTSA-2017-0069 (Oct. 26, 2018), https://www.regulations.gov/document?D=NHTSA-2018-0067-11969.[4]

Despite voluminous objections to the Proposed Regulation, on September 27, 2019, NHTSA finalized the rulemaking, purporting to terminate California's historic right to set its own vehicle emissions standards pursuant to waivers EPA grants under the CAA. *See* 84 Fed. Reg. at 51,310. NHTSA concluded that EPCA preempts any state or local regulation limiting or prohibiting tailpipe GHG emissions from automobiles (the "Preemption Regulation"). *See, e.g.*, *id.* at 51,313. NHTSA codified its Preemption Regulation at 49 C.F.R. §§ 531.7, 533.7, and Appendix B to Parts 531 and 533, and such regulations take effect on November 26, 2019. 84 Fed. Reg. at 51,310, 51,361–63. Two groups of plaintiffs brought suit in the above-captioned cases challenging NHTSA's Preemption Regulation: a group of state and local government plaintiffs ("State Plaintiffs") sued on September 20, 2019, and a group of non-profit environmental advocacy organizations ("NGO Plaintiffs") sued on September 27, 2019.

## C.    NCAT's Interests

NCAT is a coalition of companies and non-profit organizations that supports electric vehicle and other advanced transportation technologies and related infrastructure.[5] NCAT member Tesla, Inc. ("Tesla") manufactures all-electric vehicles in the U.S. that are sold in California, the Section 177 States, and across the United States, and thus is directly subject to state GHG and ZEV standards. Tesla has earned tradable compliance credits under the existing state performance

---

[4]    At the same time, NCAT was a petitioner in a case challenging EPA's "Mid-Term Evaluation" of its light-duty vehicle GHG emissions standards. *See California ex rel. Brown v. EPA*, No. 18-1114, 2019 WL 5474018, at *4 n.1 (D.C. Cir. Oct. 25, 2019).

[5]    NCAT's membership is listed on its website at https://www.lwncat.com/Membership, and currently includes Ampaire, Atlantic City Electric, Baltimore Gas & Electric, ChargePoint, Commonwealth Edison Company, Delmarva Power, Edison International, EVgo, Exelon Corporation, Pacific Gas and Electric Company, PECO, PEPCO, Plug In America, Portland General Electric, Rivian Automotive, Sacramento Municipal Utility District, and Tesla, Inc.

standards, which reward manufacturers that deploy innovative technologies that exceed the standards.[6] NCAT coalition members also include companies engaged in electricity generation, transmission and distribution; and companies involved in manufacturing, deploying, and operating electric vehicle charging infrastructure.   NCAT's members collectively have invested and committed to investing hundreds of millions of dollars to build infrastructure to support increased electric vehicle deployment and are engaged in proceedings to establish rate structures and programs to maximize the benefits and minimize the costs of integrating electric vehicle load to the electric grid.

State GHG and ZEV performance standards incentivize and support investment in the development and deployment of electric vehicles, which have zero tailpipe emissions of GHGs or other pollutants, and other advanced low-emission and zero-emission vehicles.  California and the Section 177 States that have adopted these standards make up more than one-third of the U.S. auto market.[7] Accordingly, NHTSA's purported elimination of state authority through the Preemption Regulation adversely affects the marketplace for transportation electrification and deployment of advanced vehicle technologies across the country—undermining business opportunities for utilities, manufacturers, and infrastructure companies.

State GHG and ZEV standards also play a key role in supporting major infrastructure and economic development plans in the states that have adopted them.  NCAT's members have made significant investments and are implementing long-term business strategies that depend upon continued implementation of the GHG and ZEV regulations, and on the vitality of the state

---

[6]    *See, e.g.*, California Air Resources Board, *2018 Zero Emission Vehicle Credits* 2, https://ww2.arb.ca.gov/ sites/default/files/2019-11/2018%20ZEV%20Credit%20Annual%20Disclosure_103119.pdf (last visited Nov. 13, 2019).

[7]    California Air Resources Board, *States that have Adopted California's Vehicle Standards under Section 177 of the Federal Clean Air Act* (Sept. 27, 2019), https://ww2.arb.ca.gov/sites/default/files/2019-10/ca_177_states.pdf.

authorities upon which the regulations are based.  NHTSA's Preemption Regulation reduces incentives for electric vehicle manufacturing and creates substantial investment uncertainty in related areas that affect NCAT members' businesses.  NCAT therefore moves to intervene as a plaintiff in this litigation to challenge NHTSA's unlawful Preemption Regulation.

## ARGUMENT

## I.   NCAT IS ENTITLED TO INTERVENE AS OF RIGHT

A movant is entitled to intervene as of right in a case pursuant to Federal Rule of Civil Procedure 24(a)(2) if (1) the movant has constitutional standing, (2) the motion is timely, (3) the movant claims a legally protected interest in the action, (4) the action threatens to impair that interest, and (5) the movant's interest is not adequately represented by the existing parties.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731–32 (D.C. Cir. 2003); *see also Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015); *Amador Cty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014).  NCAT satisfies each of these conditions.

### A.   NCAT Has Standing To Intervene

NCAT has standing to intervene as a plaintiff in these cases as an association.  An association has constitutional standing to sue on behalf of its members if (1) at least one member would have standing to sue in its own right, (2) "the interests the association seeks to protect are germane to its purpose," and (3) "neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit."  *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).  As with any other party, a member of such an association has standing to sue under Article III of the Constitution by demonstrating (i) a "concrete and particularized" injury that is "'actual or imminent,'" (ii) that this injury is "'fairly . . . trace[able]'" to the challenged conduct, and (iii) that the requested relief is likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560–61 (1992) (alteration in original) (citations omitted); *Carpenters Indus. Council v. Zinke,* 854 F.3d 1, 5 (D.C. Cir. 2017); *see also Sierra Club*, 292 F.3d at 898–99 (explaining that at the pleading stage the bar to show constitutional standing is lower and general factual allegations suffice).

NCAT satisfies the requirements for an association to have constitutional standing because NCAT members would have standing to sue in their own right.  The D.C. Circuit Court of Appeals has made clear that if a prospective party "is 'an object of the [agency] action (or forgone action) at issue' . . . there should be 'little question'" regarding the party's standing.  *Sierra Club*, 292 F.3d at 900 (quoting *Lujan*, 504 U.S. at 561–62).  Economic injury is cognizable harm sufficient to demonstrate constitutional standing.  *See, e.g., Clinton v. City of N.Y.*, 524 U.S. 417, 432–33 (1998).  The D.C. Circuit recently stated: "Economic harm to a business clearly constitutes an injury-in-fact.  And the amount is irrelevant.  A dollar of economic harm is still an injury-in-fact for standing purposes."  *Carpenters Indus. Council*, 854 F.3d at 5.  Further, "[f]or standing purposes, petitioners need not prove a cause-and-effect relationship with absolute certainty; substantial likelihood of the alleged causality meets the test."  *Competitive Enter. Inst. v. NHTSA*, 901 F.2d 107, 113 (D.C. Cir. 1990).

Because NCAT member Tesla is an object of the EPCA Preemption Regulation, NCAT has standing to sue.  *See, e.g.*, *Sierra Club*, 292 F.3d at 900.  Tesla manufactures electric vehicles sold in California and the Section 177 States.  Therefore, Tesla is subject to California's and the Section 177 States' GHG and ZEV standards that NHTSA's Preemption Regulation purports to eliminate, and Tesla also is regulated under NHTSA's federal CAFE standards that NHTSA uses to justify such preemption.

From an economic harm perspective, NHTSA's Preemption Regulation causes substantial financial harm to NCAT's members.  For instance, under the existing state performance standards electric vehicle manufacturers, including NCAT member Tesla, that deploy innovative technologies that exceed the standards are rewarded with tradable compliance credits under California's standards that can be sold to underperforming vehicle manufacturers.  Enforcement of the Preemption Regulation would end the transactions of these tradeable compliance credits and negatively impact the revenue electric vehicle manufacturers are able to invest in new manufacturing, research, and development, and the expansion of charging infrastructure.  In addition, California's standards for many years played a critical role in driving the business case for investing in manufacturing vehicles with zero or low GHG emissions, as well as related infrastructure.  By declaring preempted California's and the Section 177 States' GHG and ZEV standards, NHTSA's Preemption Regulation directly undermines the ability of those states to continue to incentivize electric vehicle and related technologies.  NCAT's members collectively have invested, or are in the process of investing, billions of dollars in manufacturing electric vehicles and deploying charging infrastructure.  If this Court vacates the Preemption Regulation and enjoins Defendants from implementing, relying on, or enforcing the Preemption Regulation, then these injuries to NCAT's members would be redressed.

Finally, the interests that NCAT seeks to protect in theses case are germane to its purposes, as explained above, *supra* at 5–6.  And the claims and relief requested do not require any individual member of NCAT to participate in the litigation.  Accordingly, NCAT meets the associational test and has constitutional standing to intervene in these cases.

### B.      NCAT's Motion is Timely

Under Rule 24(a), timeliness is evaluated based on all of the circumstances involved, including the time elapsed since the inception of the suit, the purpose of intervention, the need for

intervention as a means for protecting the movant's rights, and the probability of prejudice to the parties already in the case. *See Amador*, 772 F.3d at 903. NCAT's intervention is timely, coming less than two months after the State Plaintiffs and NGO Plaintiffs filed their suits and prior to any merits filings, including responsive pleadings. *See Fund For Animals*, 322 F.3d at 735 (holding intervention was timely when movant filed less than two months after suit was filed and before any responsive pleadings on the merits).[8]

On October 15, 2019, Defendants served a motion to dismiss arguing that this Court lacks jurisdiction to hear these cases because jurisdiction lies exclusively in the court of appeals, and arguing in the alternative that that this Court should transfer the cases to the D.C. Circuit. On November 14, 2019, State Plaintiffs and NGO Plaintiffs served responses to this motion to dismiss. Defendants' reply must be served on or before November 27, 2019. Minute Order (Oct. 21, 2019). As explained in NCAT's proposed complaint, NCAT believes that this Court has jurisdiction to hear this challenge. NCAT supports State Plaintiffs and NGO Plaintiffs responses to the motion to dismiss, and does not plan to file a separate substantive response to Defendants' motion to dismiss based on the current briefing schedule set in the Court's October 21, 2019 Minute Order. Accordingly, NCAT's intervention in these cases would not create any disadvantages for the existing parties. *See Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014) (explaining that "relevant caselaw says [that] the most important consideration [is]: the fact that granting . . . intervention was highly unlikely to disadvantage the existing parties"). NCAT's intervention motion is therefore timely.

---

[8]   Although Defendants have filed a notice of intent to file a jurisdictional motion to dismiss regarding the proper venue for the litigation, they have not made any filings on the merits.

### C.      NCAT Claims Legally Protected Interests In These Cases

NCAT claims legally protected interests in the outcome of these cases.  The D.C. Circuit has held that the existence of constitutional standing suffices to show a legally protected interest for purposes of Rule 24.  *Fund for Animals*, 322 F.3d at 735; *Jones v. Prince George's Cty.*, 348 F.3d 1014, 1018–19 (D.C. Cir. 2003).  As explained in Section I.A. above, NCAT's member Tesla is an object of NHTSA's Preemption Regulation, and the business interests of NCAT's members are directly harmed by such regulation.  NCAT's interests thus can be protected by vacating the EPCA Preemption Regulation, and NCAT therefore claims legally protectable interests in the litigation.

### D.      These Cases Threaten To Impair NCAT's Interests

These cases substantially endanger NCAT's interests, because as explained in Section I.A., the Preemption Regulation regulates an NCAT member and it harms members' business interests. It is also a fundamental *precondition* for future rulemakings that lower fuel economy standards. Under Rule 24(a), impairment of interests refers to "'the "practical consequences" of denying intervention, even where the possibility of future challenge to the regulation remain[s] available.'" *Fund For Animals*, 322 F.3d at 735 (alteration in original) (citation omitted).  If the task of reestablishing a prior regulation in separate litigation will be "difficult and burdensome," then a movant-intervenor's interests are sufficiently threatened to justify present intervention.  *Id.*  The D.C. Circuit in *Fund For Animals* addressed a situation in which an agency of the Mongolian government moved to intervene in litigation challenging a new regulation by the U.S. Fish and Wildlife Service that threatened importation of Mongolian sheep.  The court found that while a later, separate lawsuit could in theory also reestablish the status quo ante, the Mongolian government's revenues still would be damaged in the interim period, justifying intervention.  *Id.*

Similarly, NCAT members' businesses are adversely affected by the Preemption Regulation. And while it may be possible for NCAT to sue in separate litigation, or regarding a future rulemaking, it will be difficult for states to issue future ZEV or GHG vehicle emissions regulations if NHTSA's Preemption Regulation survives this challenge. The Preemption Regulation fundamentally alters the regulatory landscape for incentives for electric and other advanced technology vehicles due to its purported preemption of state GHG and ZEV standards, regardless of the specific CAFE standards NHTSA will set in the future. Enforcement of the Preemption Regulation therefore threatens to substantially impair NHTSA's interests.

### E.  NCAT's Interests Are Not Adequately Represented By The Existing Parties

NCAT's interests are not adequately represented by the existing parties in these cases because NCAT represents the interests of private sector businesses in promoting electric vehicles and related infrastructure development and deployment. NCAT's interests are therefore distinct and different from the interests of State Plaintiffs (state and local governments) and NGO Plaintiffs (non-profit environmental advocacy organizations). Demonstrating inadequate representation under Rule 24(a) requires showing only that the movant's interests *may* not be adequately represented by existing parties, and the standard is "not onerous." *Fund For Animals*, 322 F.3d at 735 (citation omitted). And importantly, the D.C. Circuit has "look[ed] skeptically on government entities serving as adequate advocates for private parties." *Crossroads*, 788 F.3d at 321. This is especially true if the private-party intervenor asserts a "financial stake in the outcome" of the suit. *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).

NCAT's members have financial interests in the outcome of this action that neither the State Plaintiffs nor the NGO Plaintiffs share. NCAT's members are often the direct beneficiaries of vehicle GHG emissions and ZEV standards, and their financial interests—which are distinct from the interests of the governmental and non-profit plaintiffs—are directly affected by NHTSA's

Preemption Regulation and the outcome of this litigation.  Accordingly, NCAT's interests are not adequately represented by the existing parties.

## II.      ALTERNATIVELY, THIS COURT SHOULD GRANT NCAT PERMISSIVE INTERVENTION

In the alternative, the Court should grant NCAT permissive intervention pursuant to Rule 24(b)(1)(B).  A party may be permitted to intervene if it has a claim or defense predicated on a question of law or fact common to the action.  Fed. R. Civ. P. 24(b)(1)(B).  For the reasons discussed above, NCAT's claims are not only predicated on a common question of law or fact— they are almost identical to the claims raised by the State Plaintiffs and NGO Plaintiffs.  And NCAT's intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  As discussed above, *supra* at 9–10, granting NCAT's motion will not cause undue delay or prejudice, because Defendants have not yet made any merits filings and any fact-finding has not yet begun, much less been completed.  Accordingly, if this Court concludes NCAT is not entitled to intervene as of right, the Court still should grant permissive intervention.

## CONCLUSION

For the foregoing reasons, NCAT requests that this Court grant NCAT's motion to intervene in the above-captioned cases as of right, or in the alternative, grant permissive intervention.

Dated:  November 15, 2019

Respectfully submitted,

*/s/ Devin M. O'Connor*
Devin M. O'Connor (D.C. Bar #1015632)
Ethan P. Prall (D.C. Bar #1029341)
(application pending)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC  20004
(202) 637-2200
devin.o'connor@lw.com

*Counsel for Proposed Intervenor-Plaintiff*
*National Coalition for Advanced Transportation*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2019, I electronically filed the foregoing Memorandum in Support of Motion of National Coalition for Advanced Transportation to Intervene as a Plaintiff with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.

The participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ Devin M. O'Connor*
Devin M. O'Connor